## CELITE S.A. INDUSTRIA E COMERCIO, Plaintiff,

v.

## STERLING PLUMBING GROUP, INC., and the Kohler Company, Defendants.

### No. Civ.A. 97–C–1151.

United States District Court, E.D. Wisconsin.

Jan. 28, 2000.

Nolan C. Leake, King & Spalding, Atlanta, GA, John E. Machulak, Susan R. Robertson, Machulak, Hutchinson, Robertson, O'Dess & Reilly, Milwaukee, WI, for plaintiff.

Peter C. Karegeannes, Quarles & Brady, Milwaukee, WI, for defendants.

**DECISION AND ORDER DATED 28th January 2000 GRANTING DEFENDANT THE KOHLER COMPANY'S MOTION FOR SUMMARY JUDGMENT**

REYNOLDS, District Judge.

Plaintiff Celite S.A. Industria e Comercio ("Celite") commenced this breach-of-contract action on July 23, 1997, in Georgia state court. Defendant Sterling Plumbing Group, Inc. ("Sterling"), Sterling removed this action to the United States District Court for the Northern District of Georgia, Atlanta Division. On October 24, 1997, the United States District Court for the Northern District of Georgia, Atlanta Division, granted Sterling's motion to transfer venue pursuant to 28 U.S.C. § 1404, and this action was transferred to this court. On March 24, 1999, Celite filed a second amended complaint, adding a claim against defendant The Kohler Company ("Kohler") for tortious interference with the contract between Celite and Sterling.

This court has jurisdiction over this action based on 28 U.S.C. § 1332, because there is diversity of citizenship and the amount in controversy exceeds $75,000.

### BACKGROUND[1]

Effective August 1, 1994, Sterling entered into an amended supply and purchase agreement ("Agreement") to pur-

**1.** The court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). All facts are considered in the light most favorable to the non-movant, and all inferences are resolved in the non-movant's favor. *Simpson v. Borg–Warner Automotive,* 196 F.3d 873, 876 (7th Cir.1999).

The background facts are taken from Kohler's proposed findings of fact, *see* Local Rule 6.05 (E.D.Wis.), to which Celite has no objec-

chase toilets from Celite. In the summer and fall of 1995, Sterling was unable to sell at a profit the toilets that Celite had shipped to Sterling under the Agreement, as Sterling's target customer for the toilets, Fleetwood Homes, was unwilling to purchase Celite's two-bolt toilet at Sterling's price. Sterling, however, believed that Fleetwood Homes would purchase a three-bolt version of the Celite toilet.

Sterling was at all times material to this action a wholly-owned subsidiary of Kohler.

At the time that Sterling was having problems with Fleetwood Homes, Kohler's production facility in Monterrey, Mexico ("Sanimex plant") was operating at a loss and far below its available capacity. Kohler assigned Joseph Harbrecht ("Harbrecht") of Kohler [2] the task of getting out of the Agreement to end Sterling's losses which were occurring under the Agreement. Kohler also assigned Harbrecht the task of ending the losses at the Sanimex plant.

Harbrecht determined that Kohler would have Sterling end the Agreement and have the Sanimex plant begin producing three-bolt toilets for sale to Fleetwood Homes. During fall 1995 negotiations with Celite, Harbrecht asked Celite to sell the three-bolt toilet mold to Kohler so that Kohler could produce the toilets at the Sanimex plant and pay Celite a royalty. While Celite was interested in the offer, Celite did not want to end the Agreement and wanted to repair or replace toilets that Sterling claimed were defective. Harbrecht, however, refused to allow Celite to repair or replace any defective toilets and demanded an end to the Agreement. In response, Celite proposed to end the Agreement and sell the three-bolt toilet mold in exchange for a royalty agreement and a $1 million payment to Celite.

While Harbrecht considered this a favorable offer, Kohler officials decided it would be more advantageous to Kohler to end the Agreement and supply Fleetwood homes with Sterling's existing Celite toilet inventory and with toilets from the Sanimex plant. Harbrecht subsequently informed Celite that the Agreement was dissolved, that Sterling wanted no more product from Celite, and that Sterling no longer wanted the three-bolt toilet mold from Celite.

## DISCUSSION[3]

### Celite's Tortious Interference with Contract Claim

Kohler argues that Celite cannot succeed on its tortious interference claim, because Kohler's actions were privileged, i.e., Kohler was protecting its interest in Sterling, its subsidiary, by stopping Sterling from continuing under the unprofitable Agreement with Celite.

The deciding case is *Allen & O'Hara v. Barrett*, 898 F.2d 512, 516–17 (7th Cir. 1990) (applying Wisconsin law). In *Allen*, a wholly-owned subsidiary entered into a demolition contract for the renovation of the parent company's office. After significant delays in the demolition work, the parent company's president voiced concerns to the subsidiary, and the subsidiary terminated the demolition contract. The Seventh Circuit, recognizing that Wisconsin courts have adopted the Restatement (Second) of Torts with respect to tortious interference with contracts, found that section 769 of the Restatement applied. Section 769 states:

tion. (Celite's Sept. 17, 1999 Resp.) When there is no objection to proposed findings of fact, the court accepts them as true. Local Rule 6.05(d) (E.D.Wis.). Celite has not proposed any additional findings of fact. *See* Local Rule 6.05(b)(2) (E.D. Wis.). This court's March 11, 1999, and August 19, 1999 summary judgment decisions supply additional background facts as to the relationship between the parties.

2. While neither party proposes facts regarding Harbrecht's position at Kohler, he has previously been identified as the then-president of Kohler.

3. The parties agree that Wisconsin law governs Celite's tortious interference with contract claim.

One who, having a financial interest in the business of a third person intentionally causes that person not to enter into a prospective contractual relation with another, does not interfere improperly with the other's relation if he

(a) does not employ wrongful means and

(b) acts to protect his interest from being prejudiced by the relation.

Restatement (Second) of Torts § 769 (1979).

The Seventh Circuit found that while the parent company may have had a malicious purpose behind its interference with the demolition contract, there was no claim for tortious interference because the parent company had acted to protect its interest in the demolition, and there was no evidence that the parent company used unlawful means.

Celite's attempts to negate and distinguish *Allen* are unsuccessful. First, Celite argues that the financial interest privilege does not apply because of the pre-existing Agreement between Celite and Sterling, since section 769 applies only to *prospective* contractual relations. However, *Allen* applied section 769 to a situation involving a preexisting contract. Celite also asserts that *Allen*'s holding is consistent with section 767 of the Restatement, so that this court should apply section 767 to the present issue.[4] However, the court in *Allen* did not utilize that section of the Restatement. *Allen* directs that the financial interest privilege enunciated in section 769 applies here.

Finding that section 769 applies, the next question is whether Kohler used "wrongful means" to interfere with the Agreement; if so, Kohler cannot claim section 769's financial interest privilege. It is undisputed that Kohler never engaged in any coercion by physical force or made any fraudulent misrepresentations or threats against Celite or Sterling (Kohler's Aug. 6, 1999 Proposed Finding of Fact ¶ 3), which are the types of wrongful means recognized by the Seventh Circuit in *Allen*.

Kohler asserts that there is no evidence that it engaged in physical force, fraud, or illegal conduct when it interfered with the Agreement, so that Kohler did not use wrongful means. The court agrees with Celite that wrongful means is not necessarily limited only to those circumstances identified by Kohler. Celite contends that wrongful means could be shown because Kohler violated established business customs and practices when Kohler made Sterling breach its obligations under the Agreement. However, Celite does not cite to any record evidence and proposes no facts in support of its contention, and Celite's reliance on this court's March 11, 1999 summary judgment decision to show that there is an issue of material fact with respect to wrongful means is inapposite, since that decision only addressed the relationship between Celite and Sterling.[5]

The court concludes that Kohler has established that it may rely on section 769's financial interest privilege defense, so that Celite may not recover from Kohler for tortious interference with the Agreement.

4. Section 767 provides:

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

5. Celite also argues, without citation to controlling authority, that Kohler must show that it induced the breach to protect its investment in Sterling, and not for any other reason, or that the reason to help Sterling was the predominant motive (which would be a question of fact). The court notes that *Allen* observed that "if the action is directed toward protecting the actor's interest, it is immaterial that he also takes a 'malicious delight' in the harm caused by his action." 898 F.2d at 516.

## CONCLUSION

Defendant The Kohler Company's motion for summary judgment is **GRANTED**.

Plaintiff Celite S.A. Industria e Comercio's claim against defendant The Kohler Company is **DISMISSED**.

On or before fourteen days from the date of this order, defendant The Kohler Company shall serve and file a submission regarding whether it continues to join in defendant Sterling Plumbing Group, Inc.'s first counterclaim[6] against plaintiff Celite S.A. Industria e Comercio.

The courtroom deputy clerk will notice a telephonic conference to schedule pretrial and trial dates.

---

6. This court's August 19, 1999 decision and order dismissed defendants' second, third, and fourth counterclaims.